# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:19-cr-00069 |
| ) | |
| KEANTHONY BILLS ) | |

**MEMORANDUM AND ORDER**

This case is before the undersigned for determination of whether to reopen the detention hearing. *See* Docket No. 24 (minute entry for proceedings held before Chief Judge Crenshaw). Although the filings in this case may suggest that the detention hearing was reopened, the Court heard evidence on April 23, 2019 for purposes of determining whether to reopen the detention hearing with reservation of a decision on both reopening the detention hearing and release or detention of Defendant Keanthony Bills (the "Defendant"). Following the evidentiary hearing on April 23, the proceeding was continued to April 25, 2019, for the parties to make any additional arguments and the Court's ruling. For the reasons stated on the record in open court on April 25, and supplemented below, the Court finds that the government offered new evidence that would materially affect release or detention. Upon consideration of such evidence, the Court concludes that Defendant is properly detained pending trial.

## I. Background

On March 13, 2019, Defendant was indicted by a grand jury with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 924(g)(1) and 924. The indictment charges that on January 2, 2019, Defendant, having been previously convicted of a felony, did knowingly possess, in and affecting commerce, a Glock GmbH model 27 caliber .40 pistol. The government filed a motion for detention (Docket No. 4), which was heard on April 9, 2019.

In support of its motion, the government offered the testimony of Special Agent Riley O'Brien with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. O'Brien testified that on January 2, 2019, detectives with the Metro Nashville Police Department ("MNPD") attempted to pull over a vehicle believed to be stolen. During that attempted stop, the vehicle fled, and the MNPD in pursuit, Defendant jumped out of the vehicle and ran away on foot. *See* Transcript of April 9 Hearing (Docket No. 20) at 5. Defendant came to some kind of barrier that prevented him from going any further, where he was apprehended with a firearm in his possession, which he later admitted to having. *Id*. at 5-6. The government also offered a photograph of Defendant in which, according to the testimony of O'Brien, Defendant was wearing the same clothes as when he was arrested, was standing in front of the same type of vehicle that was pursued by MNPD, and was holding a firearm of the same type that was in Defendant's possession at the time of his arrest. *Id*. at 6-7. On cross examination, O'Brien testified that Defendant stated that the vehicle did not belong to him and he was not driving the vehicle. *Id*. at 10. He further testified that he believed Defendant was honest during his interview. *Id*. The government did not offer any other evidence.

Defendant offered the testimony of his mother, Keri Bills, who indicated a willingness to be Defendant's third-party custodian. Tr. (Docket No. 20) at 11 and 16. Ms. Bills testified that she would be willing to report any violation by Defendant of conditions of pretrial release. *Id*. at 16.

The Court also considered the report of Pretrial Services, which reflects some prior criminal history, including separate charges for domestic assault and for resisting arrest that were dismissed. Defendant's prior criminal history also includes prior felony convictions for attempted robbery and burglary of a motor vehicle. He was also previously convicted of misdemeanor offenses for theft and joyriding.

Based on the totality of the circumstances, the Court concluded that the evidence did not establish clearly and convincingly that there were not conditions of release that could reasonably mitigate against any safety risk and that there was not a preponderance of the evidence of a flight risk. The Court therefore released Defendant on conditions, including into the third-party custody of his mother, Keri Bills.

Following the Court's ruling, the prosecutor requested a recess to discuss internally whether the government intended to seek an appeal and a stay pending appeal. Following the recess, the Assistant U.S Attorney stated the government intended to appeal Defendant's release and requested a stay based on Defendant being "a lead suspect in a murder investigation." Tr. (Docket No. 20) at 48. Defendant's counsel objected to the Assistant U.S. Attorney's statements as not being part of the evidence offered during the detention hearing and further objected to any stay. *Id*. at 48-50. The Assistant U.S. Attorney acknowledged that the investigation was ongoing and that the government's "preference would have been to allow the investigation to continue without making [Defendant] aware of it for preservation of evidence, but given the - - prospect of - - of him being released, or revealing the - - existence of this investigation before it was complete, [the government] would rather … make the Court aware of it and - - make that all part of the record and - - and continue the investigation than for it to remain secret." *Id*. at 49. The government also stated that it intended to promptly appeal. A short stay was therefore granted. *See* Docket No. 15.

In their notice of appeal, filed later in the same day on April 9 following the detention hearing, the government recited details of an ongoing investigation into the murder of a young woman in January of 2018, including of Defendant as a suspect. Docket No. 11 at 1-2. The government also offered more details of the circumstances of Defendant's arrest for the instant

3

offense on January 2, 2019. *Id*. at 2. Chief Judge Crenshaw extended the stay of Defendant's release pending a hearing on the government's appeal. Docket No. 17. Defendant filed a statement in opposition to the government's request for the Court to consider evidence not previously offered at the detention hearing. Docket No. 22.

At the April 18 hearing on the government's appeal pursuant to 18 U.S.C. § 3145, Chief Judge Crenshaw stayed further proceedings pending the government moving to reopen the detention hearing. Docket No. 24. On April 22, 2019, the government filed a "brief in support of reopened detention hearing" (Docket No. 26), which supplements the government's previous filing supporting its detention motion, but which does not expressly request that the detention hearing be reopened or address the standards for reopening the detention hearing. On April 23, the Court commenced the hearing to consider whether to reopen the detention hearing and, if reopened, to consider the merits of the government's request that Defendant be detained pending trial.

At the April 23 hearing, the government argued that three instances of new evidence warranted reopening the detention hearing: (1) that Defendant ostensibly lied to Pretrial Services about having lived at his current address for four years when he has, in fact, only lived there for a year; (2) that DNA samples were taken and sent for analysis in the murder investigation; and (3) that additional information was obtained about Defendant's dismissed charge for resisting arrest. Defendant's attorney argued that none of this was new information that was unavailable to the government prior to the April 9 initial detention hearing.

On April 23, the Court again heard from O'Brien, who testified that Defendant had previously been interviewed by law enforcement in connection with an investigation of transportation of stolen guns and admitted that he knew the guns were stolen. O'Brien

4

acknowledged on cross examination that the interview with Defendant occurred on January 3, 2019, prior to the initial detention hearing.

O'Brien further testified about several drive-by shootings at both the former and current residences of Keri Bills. According to the testimony, incident reports of those shootings were obtained by the government after April 9. O'Brien admitted on cross examination that the incident reports do not reflect any involvement or participation by Defendant in the drive-by shootings, although he may have resided at the residences at the time of the incidents. The incident report of the January 4, 2018 drive-by shooting indicates that Defendant was in the home at the time that the shots were fired at the home. Defendant's Exhibit 2 at 4 and 8. Further, the November 1, 2018 incident report indicates that two drive-by shootings occurred at Ms. Bills' current residence, once on October 31 and once on November 1. Defendant's Exhibit 3. O'Brien further testified that Defendant's mother stated to investigating officers at the scene that Defendant was the cause of the drive-by shootings.

O'Brien also testified that on November 1, 2018, Defendant was arrested for resisting arrest. Although this charge was reflected in Defendant's criminal history (as a dismissed charge), the incident report was not obtained by the government until after the April 9 detention hearing. According to the incident report, MNPD approached a vehicle believed to have been involved in the commission of a felony. During a subsequent pursuit, Defendant, who was reported to be a passenger in the vehicle, fled into a wooded area on foot and was later apprehended. O'Brien recited his prior testimony during the April 9 detention hearing that, on January 2, 2019, Defendant also fled a vehicle in pursuit by MNPD and was apprehended after a foot chase.

Regarding the murder investigation, O'Brien testified that tracking - - which was, according to O'Brien, either a cell tower or GPS technology - - placed a cellphone belonging to

Keri Bills but used by Defendant at the scene of the January 2018 murder and later at the location where the car stolen from the murder victim was abandoned. O'Brien further testified that prior to the April 9 detention hearing, he was aware of a cellphone number associated with the murder but not of the tracking and other information.[1] O'Brien stated that Defendant's brother had been previously interviewed by MNPD during the murder investigation.

O'Brien also testified about Defendant's reported gang involvement. He stated this information was derived by tattoos believed to be gang emblems, as well as Defendant's inclusion on a list of known gang members or affiliations maintained by the State of Tennessee (which is information that was previously provided in the Pretrial Services report). O'Brien additionally testified that Keri Bills, into whose third-party custody Defendant was placed and who is Defendant's mother, has five previously unknown misdemeanor theft convictions.[2]

Defendant's mother, Keri Bills, also testified on April 23. Ms. Bills testified that two of her theft convictions were thefts by her mother, who used her name, but for which Ms. Bills

---

[1] The Court notes that there was some question about the timing of the government's knowledge of the cellphone location tracking, because within two hours of the conclusion of the initial detention hearing (*see* Docket No. 12 at 1), the government filed its notice of appeal (*see* Docket No. 11 and accompanying filing receipt), which stated that Defendant's "cellphone placed him at the scene of the murder … and his cellphone placed him at the location where the car was abandoned shortly after the shooting." Docket No. 11 at 2-3. Defendant's counsel noted this same discrepancy during the continued hearing on April 25. In further explanation, the Assistant U.S. Attorney stated on April 25 that, at the time of the initial detention hearing, the government was aware of the ongoing state investigation into the homicide but received the information about the tracking of Defendant's phone after that hearing.

[2] O'Brien additionally testified about other of Defendant's criminal background found in the Pretrial Services report, as well as restated testimony he had previously given at the initial detention hearing. For the reasons stated below, this testimony, as well as O'Brien's testimony about Defendant's alleged involvement in transportation of stolen guns and Defendant's reported gang involvement, all of which was known to the government prior to the original detention hearing, is disregarded by the Court as not new evidence within the meaning of § 3142(f).

accepted responsibility. On cross examination, Ms. Bills admitted that she lied about having committed the thefts, which occurred in 2011 or before, to keep her mother from going to jail.

Ms. Bills disputed that she told MNPD investigating the drive-by shootings at her residence were happening because of Defendant. She stated that her prior address was next door to what she believed to be a drug house. She acknowledged that she was asked by the investigating officers how many children she had and that, in answering that question, she told them that Defendant kept getting in trouble, but she denied ever having told them that Defendant was the cause of the shootings.

## II. Discussion

The Bail Reform Act, 18 U.S.C. §§ 3141-3150, which governs pretrial release determinations, provides that a detention hearing

> may be reopened at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). The analysis under § 3142(f) is two-pronged, the movant, whether prosecutor or defendant, must establish that: (1) information exists that was not known to the movant at the time of the initial detention hearing and (2) the new information is material to release conditions regarding flight or dangerousness. *United States v. Tommie*, No. CR-10-1578-PHX-SRB(DKD), 2011 WL 2457521, at *2 (D. Ariz. June 20, 2011). Application of this rule should be premised on "basic notions of fairness" that a party should not get a second bite of the detention apple unless there is some demonstrated legitimate reason for not having initially presented the evidence. *United States v. Flores*, 856 F.Supp.1400, 1405 (E.D. Cal. 1994); *see also, United States v. Bowens*, No. CR-07-5442-PHX-ROSE(CV), 2007 WL 2220501, at *3 (D. Ariz. July 31, 2007).

7

Then, that new evidence is material if there is a reasonable probability that the initial determination would have been different. See *United States v. Havens*, 487 F.Supp.2d 335, 339-40 (W.D. N.Y. 2007) (electing not to reopen detention hearing because the newly discovered information would not have changed the court's decision to detain the defendant pending trial). *See also United States v. Avellino,* 136 F.3d 249, 256 (2nd Cir. 1998) (evidence is generally material "if there is a reasonable probability that … the result of the proceeding would have been different"). Ultimately, the determination of whether to reopen a detention hearing is within the discretion of the district court. *United States v. Watson*, 475 Fed. App'x 598, 599-600 (6th Cir. 2012).

Some courts have strictly construed the language "not known to the movant at the time of the hearing … holding that the hearing should not be reopened if the evidence was available at the time of the initial hearing." *United States v. Ward*, 63 F.Supp.2d 1203, 1206-07 (C.D. Cal. 1999) (collection of cases); *see also, United States v. Spring*, No. 14-10303-RGS, 2014 WL 6609156, at *2 (D. Mass. Nov. 20, 2014) (statutory language means not just actual knowledge but also constructive knowledge) (citations omitted). Other courts have applied a less strict standard. In *United States v. Tommie*, for example, the court analyzed the government's motion by considering whether there was a "complete lack of diligence" and whether the government had made repeated motions for detention. 2014 WL 2457521, at *4. In *United States v. Calvin*, the court reopened the detention hearing based on the mistaken evidence that the defendant had a prior drug trafficking conviction, even though the defendant and his counsel failed to seek a continuance to correct the error and neither denied at the initial detention hearing that the prior conviction was a drug trafficking offense. No. CR-07-0919-PHX-FJM, 2008 WL 853608, at *1 n. 3 (D. Ariz. March 27, 2008).

The Court adopts the less restrictive approach, finding most persuasive the reasoning that construing § 3142(f) too strictly would, first,

> turn detention hearings into much longer mini-trials lest someone might [later] argue an attorney or pretrial services officer "should have known this" or "could have done that," adding further delay and expense to the district courts' heavy dockets. Second, public safety or individual liberty interests might be jeopardized if the standard to reopen a person's release or detention were too high.

*Tommie*, 2014 WL 2457521, at *4. In *Tommie*, as noted, the magistrate judge applied a "complete lack of diligence" standard and also considered whether the government was attempting to "schedule seriatim hearings for detention until it 'gets it right.'" *Id*. (citing distinguishing finding in *United States v. Flores*, 856 F.Supp. at 1406).

At the April 23 hearing, the government argued that once a detention hearing is reopened, the Court may consider any evidence. No legal basis for that proposition was offered. Nor has the Court found any direct supporting authority, which is not surprising since the language of the statute itself suggests, if not directs, that only new material evidence may be considered. Further, courts have generally limited their review in a reopened detention hearing to only new material evidence. *See e.g. Flores*, 856 F.Supp. at 1407 and n.3. *Cf. Mateo Soto*, 2017 WL 3705797, at *3 (at reopened detention hearing, court would have to consider superseding indictment that did not exist at the time of the original detention hearing and other information presented at the original hearing).

Here, the Court finds that, at least as to some of the evidence offered, while it may not have been impossible for the government to have obtained the information prior to the initial detention hearing, the government's conduct was not so devoid of diligence that the detention hearing cannot be reopened. That does not, however, end the inquiry, the evidence must also be material to the issue of detention or release. 18 U.S.C. § 3142(f); *Tommie*, 2014 WL 2457521, at *4; *United*

9

*States v. Mateo Soto*, Criminal No. 16-10350-RGS, 2017 WL 3705797, at *3 (D. Mass. Aug. 8, 2017) (even previously nonexistent information must be material to the question of release or detention). The new evidence offered by the government that the Court finds to be material to the question of release or detention of Defendant is: information about the tracking of the cellphone used by Defendant; evidence that Keri Bills, Defendant's mother and putative third-party custodian, previously pled to misdemeanor theft charges even though the theft was committed by her mother; the drive-by shootings at Keri Bills' residences; and, the circumstances of Defendant's prior charge for resisting arrest.

The most compelling new evidence is the phone tracking information about which O'Brien testified that places someone using phone numbers known to be used by Defendant at the scene of Ms. Brown's murder and subsequently at the location where the stolen car was abandoned. O'Brien testified that this information was not known at the time of the initial detention hearing. According to the statements of the Assistant U.S. Attorney, the government became aware of this information shortly after the initial detention hearing but did not previously have this information. The Court appreciates the government's candor in describing the timing of the acquired information and accepts that the government did not know the full extent of the ongoing homicide investigation prior to the initial detention hearing. While it may be correct that the government could have obtained this information earlier, the Court does not find under the circumstances, including that the homicide investigation is not being conducted by federal law enforcement agencies, that there was a complete lack of diligence by the government that would preclude a reopening of the detention hearing. *See Ward*, 63 F.Supp.2d at 1207 (although defendant knew of possible sureties prior to detention hearing, full extent was known and available). *Cf. Spring*, 2014 WL 6609156, at *2 ("In an investigation of nearly three months, with the exercise of reasonable

care and diligence, the United States could have learned of the matters about which it now claims ignorance."). Nor will the Court impose a bright line rule that all potential investigative leads must be exhausted prior to the initial detention hearing, but the government is cautioned that obvious leads need to be followed up and brought to the attention of the Court.

Here, the additional evidence that tracking of Defendant's cellphone placed him at the scene of the homicide and in the vicinity where the car was later abandoned is strong evidence of a safety risk that cannot be mitigated by conditions of release and therefore would have reasonably affected the outcome of the detention hearing. Defendant argues that the evidence is too speculative; that, according to O'Brien's testimony, the cellphone belonged to Defendant's mother and was also used by Defendant's brother. The Court has taken that information into consideration, and nevertheless finds the testimony that the cellphone was also used by Defendant to be evidence of dangerousness that, with the other evidence presented at the initial detention hearing, including Defendant's prior criminal history, would have weighted the determination in favor of detention. In other words, this additional information gives the needed weight to the evidence to make it clear and convincing.

Also compelling is the new evidence that Keri Bills was previously convicted on two misdemeanor theft charges for thefts that were committed by her mother. (The other misdemeanor theft charges offered by the government do not meet the materiality test.) Apparently Keri Bills' mother identified herself as Keri Bills at the time of the theft arrests, and Keri Bills did not correct that misidentification, choosing instead to plead to the charges. In other words, Ms. Bills lied to keep her mother out of jail, which Ms. Bills acknowledged during her testimony at the April 23 hearing and which reflects an almost instinctual protective response to keep a loved one from getting in trouble and going to jail. That response may be even stronger when protecting a child.

While the Court does not doubt the sincerity of Ms. Bills' desire to assist her son by being his third-party custodian, and the convictions about which Ms. Bills was forthright, which the Court appreciates, were in 2011, the new evidence presented does cast doubt on her ability to comply with her responsibilities as a third-party custodian and therefore warrants reopening of the detention hearing.

The evidence of the drive-by shootings casts even more doubt on the appropriateness of placing Defendant into Keri Bills' third-party custody, and also warrants reopening of the detention hearing. Although the incident reports likely could have been obtained by the government prior to the original detention hearing, the Court does not find there to be a complete lack of diligence by the government in not having previously obtained the reports since they do not, as noted during the April 23 hearing, directly involve Defendant because he was in the residence for only one of the drive-by shootings.[3] Nevertheless, the pattern of incidents reflects that there is something going on with Ms. Bills' circumstances that causes her home - - at two separate addresses - - to have been the target of multiple drive-by shootings in the last year or so. That would have been enough to cause the Court reservation about placing Defendant into Keri Bills' third-party custody, and together with the circumstances of Ms. Bills' willingness to accept a conviction on theft charges to avoid consequences to her mother would have convinced the Court that Ms. Bills is not an appropriate third-party custodian, notwithstanding her good intentions. Ms. Bills' suitability as a third-party custodian was a critical condition without which the Court would not have released Defendant.

---

[3] Certainly, some prosecutors come to initial detention hearings with copies of police incident reports, judgments of conviction, and other paperwork from state and local criminal investigations and proceedings. Any Assistant U.S. Attorney who wants to avoid the prospect that a detention hearing will not be reopened following an adverse ruling should aspire to this same level of preparation.

Finally, the circumstances of Defendant's November 1, 2018 resisting arrest charge is also new material evidence. According to testimony, following a pursuit by police of a vehicle in which he was a passenger on that date, Defendant exited the vehicle and fled on foot. Arguably, this is also information that might have been available to the government prior to the detention hearing and that the government could have developed to demonstrate that Defendant has a history of fleeing from law enforcement to avoid arrest. However, the underlying circumstances are not obvious from a general resisting arrest charge, which makes this a close call and, in the absence of a complete lack of diligence, which is not the situation here, the Court finds it to be evidence that falls within the scope of the statute. And that additional evidence would have been enough for the Court to find by a preponderance of the evidence that Defendant has exhibited a pattern of attempting to avoid legally perilous situations, which, along with other evidence, including of the substantial prison sentence he faces, his prior probation violations, and the lack of an appropriate third-party custodian, demonstrate a flight risk that cannot be reasonably mitigated by conditions of release.

Based on the new material evidence described above, the Court will reopen the detention hearing. The Court will not, however, consider any other evidence offered by the government at the April 23 hearing, as such information is not new or not material or both.[4] Upon reconsideration of whether Defendant should be detained or released, including evaluation of the new evidence together with the evidence offered at the initial detention hearing, the Court finds by clear and convincing evidence that Defendant's release poses a danger to the community and also finds by

---

[4] To be clear, the Court's determination about the sufficiency of the government's evidence is limited to the question of reopening the detention hearing under § 3142(f). *See United States v. Garcia*, 445 Fed. App'x. 105, 108-09 (10th Cir. 2011) (review of a detention order under 18 U.S.C. § 3145 does not require that new information be available before a release or detention order can be reconsidered or revoked under that section).

a preponderance of the evidence that Defendant is a flight risk, neither of which can be reasonably mitigated by conditions.

Defendant is therefore remanded to the custody of the United States Attorney or his designee for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver Defendant to the United States Marshal for the purposes of an appearance in connection with a court proceeding.

Any party aggrieved by this Order may seek review pursuant to 18 U.S.C. § 3145.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge